No. 04-01-00795-CV



IN THE INTEREST OF S.A.B., a Child



From the 49th Judicial District Court, Webb County, Texas


Trial Court No. 1997-CVO-000827-D1


Honorable Ron Carr, Judge Presiding



Opinion by: Phil Hardberger, Chief Justice


Sitting: Phil Hardberger, Chief Justice

 Karen Angelini, Justice

 Sandee Bryan Marion, Justice


Delivered and Filed: July 17, 2002


AFFIRMED

 Laura Breeden ("Breeden") appeals the trial court's order granting the bill of review filed by
Andres Reyes ("Reyes") and setting aside a decree terminating Reyes's parental rights to S.A.B.
Breeden presents two issues for review, contending that the trial court erred in finding that extrinsic
fraud was committed and that Reyes had been diligent in filing the bill of review. We affirm the trial
court's order.

Background


 On December 13, 1996, a decree of paternity was entered, finding Reyes to be the father of
S.A.B., appointing Breeden as sole managing conservator of S.A.B., and appointing Reyes as
possessory conservator with specified visitation rights. In 1997, Reyes filed a motion for contempt
and motion to modify conservatorship, claiming that Breeden had moved and was depriving Reyes
of his visitation rights and seeking to be named managing conservator of S.A.B. In July of 1997,
Breeden filed a petition to terminate Reyes's parental rights, attaching a copy of Reyes's affidavit
of relinquishment of his rights which Reyes signed on June 25, 1997. On September 5, 1997, the
trial court entered a decree granting termination. The decree states, "All questions of law and fact
have been agreed to and settled between the parties."

 On June 1, 2001, Reyes filed a bill of review, alleging that Breeden had agreed that she
would not deprive Reyes of access to S.A.B. as consideration for Reyes's agreement to relinquish
his parental rights. Reyes alleged that Breeden agreed that Reyes would be allowed access and
communication with S.A.B. until such time as S.A.B. was of an age that he could choose whether
to visit Reyes or not. Reyes further alleged that in lieu of child support, the parties agreed that Reyes
would establish a trust account into which he would make weekly deposits. Reyes provided
evidence that he had established a trust account and made numerous deposits. Reyes contended that
he was denied access and communication in violation of this agreement. As evidence that he was
denied access, Reyes attached a letter from him to Breeden dated May 1, 2000, in which he details
his travel to Wisconsin and other messages he had left with Breeden's family regarding his desire
to speak with and visit S.A.B.

 On July 30, 2001, Breeden filed a motion for summary judgment requesting that the bill of
review be denied. Reyes subsequently filed an amended bill of review, attaching his affidavit
regarding the terms of the alleged agreement regarding his continued access to S.A.B. following the
termination. Reyes's affidavit states that the parties engaged in settlement negotiations prior to the
trial of the motion to modify/petition for termination of parental rights and concludes:

 A solution was reached in that the followings [sic] conditions were offered in order
to induce my acquiescence for the termination of my parental rights and the
execution of an affidavit of relinquishment of parental rights:

 1) I would establish a Trust Agreement in which deposits would be made for the
benefit of my son; the trust would end upon him reaching a certain age a[t] which
time he would have access to such funds on deposit.

 2) The trust would be an irrevocable trust.

 3) She would agree to my having continued access and communication with my son.


Reyes also attached an affidavit signed by Sharon Trigo, the attorney who represented Breeden in
connection with the termination decree. The affidavit stated that the parties met before trial in an
attempt to reach a settlement and that Breeden insisted on the termination of Reyes rights while
Reyes insisted on continued access and communication with S.A.B. Trigo's affidavit concludes:

 A solution was reached under the following terms and conditions:

 1) ANDRES REYES was to establish a Trust Agreement for the future benefit of
[S.A.B.], on unspecified terms.

 2) LAURA DIANA BREEDEN would allow ANDRES REYES to continued access
and communication, including visitations as agreed upon, in the State of Wisconsin,
on unspecified terms.


 The trial court held a joint hearing on the bill of review and motion for summary judgment.
Reyes testified at the hearing that Breeden had moved S.A.B. outside the State of Texas before the
trial commenced on the motion to modify/petition for termination of rights. Reyes testified that
Breeden promised that she would continue to allow Reyes to have access to S.A.B. if Reyes signed
the affidavit of relinquishment. Reyes testified that he agreed to establish a trust fund. Reyes
testified that the balance of the trust fund at the time of the hearing was approximately $19,000.
Reyes testified that he had phoned and written numerous times and also had spoken with Breeden's
family members imploring them to ask Breeden to allow him to see S.A.B. Reyes testified that he
traveled to Wisconsin and stayed for a week in April of 2000, but he was not allowed to see S.A.B.
During cross-examination, Reyes admitted that he was represented by counsel at the termination
proceeding. Reyes further admitted that when he signed the relinquishment, he was practicing in the
area of family law and had participated in terminations and adoptions.

 Trigo also testified at the hearing. Trigo testified that she could not specifically state whether
the parties reached an agreement. Trigo stated that Reyes expressed a desire to have continued
access and communication, but Trigo could not recall any response from Breeden. As a point of
clarification, Reyes's attorney asked Trigo to review her affidavit, and Trigo testified that she did
not "see anything on it right now that [she] could disagree with." On cross-examination, Breeden's
attorney asked Trigo whether the decree encompassed all of the agreements of the parties. In
response, Trigo stated that she did not "know of anything that was omitted."

 The trial court granted Reyes's bill of review, and Breeden appealed.

Standard of Review


 A bill of review is an equitable proceeding brought by a party seeking to set aside a prior
judgment that is no longer subject to challenge by a motion for new trial or appeal. Caldwell v.
Barnes, 975 S.W.2d 535, 537 (Tex. 1998). To set aside a judgment by bill of review, the petitioner
must ordinarily plead and prove: (1) a meritorious defense to the cause of action alleged to support
the judgment; (2) that he was prevented from making by the fraud, accident or wrongful act of his
opponent; (3) unmixed with any fault or negligence of his own. Id. A bill of review is an equitable
remedy and is available only when a party has demonstrated due diligence, and can show, through
no fault of its own, that no other legal remedy was available. Hernandez v. Koch Mach. Co., 16
S.W.3d 48, 57 (Tex. App.--Houston [1st Dist.] 2000, pet. denied).

 Breeden contends that the trial court erred in finding that she had committed extrinsic fraud
and that Reyes had been diligent in seeking bill of review relief. Breeden requests that this court
reverse the trial court's order and render judgment denying the bill of review. We construe
Breeden's issues as an attack on the legal sufficiency of the evidence to support the trial court's
findings.

 In considering legal sufficiency points, a reviewing court considers only the evidence
favorable to the decision of the trier of fact and disregards all evidence and inferences to the contrary.
See Davis v. City of San Antonio, 752 S.W.2d 518, 522 (Tex. 1988). If more than a scintilla of
evidence is offered on a fact, the evidence is legally sufficient to support the trier of fact's finding
on that matter. See Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983).

Fraud, Accident or Wrongful Act


 In her first issue, Breeden contends that the evidence is insufficient to establish that Reyes
was prevented from making a meritorious defense "by the fraud, accident or wrongful act of"
Breeden. Specifically, Breeden contends that the fraud alleged by Reyes was not extrinsic fraud.

 In relation to an attack on a final judgment, fraud may be either intrinsic or extrinsic;
however, only extrinsic fraud supports a bill of review. Tice v. City of Pasadena, 767 S.W.2d 700,
702 (Tex. 1989); Ince v. Ince, 58 S.W.3d 187, 190 (Tex. App.--Waco 2001, no pet.). Intrinsic fraud
relates to issues that were presented and resolved - or could have been resolved - in the former
action. Tice, 767 S.W.2d at 702; Ince, 58 S.W.3d at 190. Perjured testimony is considered intrinsic
fraud because it is a matter presented to and considered by the court in the original proceeding. Tice,
767 S.W.2d at 702; Ince, 58 S.W.3d at 190. Extrinsic fraud is wrongful conduct practiced outside
the adversary trial that affects the manner in which the judgment was procured, such as keeping a
party away from court or making false promises of compromise. Ince, 58 S.W.3d at 190.

 Breeden relies on a case involving perjured testimony to argue against the trial court's
extrinsic fraud finding. Although perjured testimony is intrinsic fraud, Reyes did not raise any
complaint in his bill of review regarding perjured testimony. Reyes focuses on the promises made
by Breeden to induce Reyes into signing the affidavit of relinquishment. The Texas Supreme Court
has recognized that fraudulent representations made to a party to induce the party into executing an
affidavit of relinquishment constitute extrinsic fraud. See Rogers v. Searle, 544 S.W.2d 114, 115
(Tex. 1976); see also Queen v. Goeddertz, 48 S.W.3d 928 (Tex. App.--Beaumont 2001, no pet.)
(granting bill of review where father involuntarily executed affidavit of relinquishment based on
promises of continued visitation). The testimony of Reyes and Trigo is some evidence that
fraudulent representations or false promises of compromise were made to induce Reyes to execute
the affidavit of relinquishment. In addition, the decree reflects that the termination was based on a
finding that "all questions of law and fact have been agreed to and settled between the parties." The
evidence is legally sufficient to support the trial court's finding that Breeden committed extrinsic
fraud. Breeden's first issue is overruled.

Due Diligence


 In her second issue, Breeden contends that the trial court erred in finding "that Reyes had
been diligent before filing for bill of review relief, on the face of the pleadings and on the evidence
presented at trial." Breeden argues that Reyes was not diligent in pursuing relief by bill of review
and that Reyes should have "test[ed] Ms. Breeden's good faith in this alleged agreement and require
access to the child before entering into any kind of agreement." 

 Breeden's first contention appears to be raising a laches-type defense to the bill of review
petition. However, the bill of review was filed within the applicable four-year limitations period.
"Generally in the absence of some element of estoppel or such extraordinary circumstances as would
render inequitable the enforcement of petitioners' right after a delay, laches will not bar a suit short
of the period set forth in the limitation statute. Laches should not bar an action on which limitations
has not run unless allowing the action 'would work a grave injustice.'" Caldwell v. Barnes, 975
S.W.2d at 538 (citations omitted). In this case, Reyes sought bill of review relief because Reyes was
fraudulently induced to relinquish his parental rights through a settlement that the trial court
recognized in its termination decree. If Reyes is precluded from seeking relief, Breeden would be
permitted to benefit from her fraudulent promises, depriving S.A.B. from visitation with his father.
Under these circumstances, allowing the bill of review action would not work a "grave injustice,"
and the trial court properly rejected Breeden's laches contention.

 Breeden's second contention is that Reyes was negligent in not testing her good faith by
requiring access to S.A.B. before entering into any kind of agreement. Breeden's contention ignores
that public policy favors the amicable settlement of controversies. Transport Ins. Co. v. Faircloth,
898 S.W.2d 269, 280 (Tex. 1995). "Settlements are favored because they avoid the uncertainties
regarding the outcome of litigation, and the often exorbitant amounts of time and money to prosecute
or defend claims at trial." Id. A settlement should be particularly favored in a case involving two
parents fighting over access to their young son.

 Breeden's second issue is overruled.



Conclusion


 The trial court's order is affirmed.


 PHIL HARDBERGER, 

 CHIEF JUSTICE


DO NOT PUBLISH